CENTER FOR DISABILITY ACCESS, LLP
MARK D. POTTER, ESQ., SBN 166317
RUSSELL C. HANDY, ESQ., SBN 195058
100 East San Marcos Blvd., Suite 400
San Marcos, CA 92069-2988
(760) 480-4162; Fax (760) 480-4170
E-Mail Address: cda@cda4access.com

Attorney for Plaintiff, DARRYL EVERSOLE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL EVERSOLE,<br><br>    Plaintiff,<br><br>v.<br><br>VALLEY PLAZA, LLC, A Delaware Limited Liability Company; ANNA'S LINENS, INC., A Delaware Corporation, and DOES 1 through 100, inclusive<br><br>    Defendants. | Case No.: CV-07-5990 GW (JCx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>DATE: August 11, 2008<br>TIME: 8:30 a.m.<br>CTRM: 10<br><br>HONORABLE GEORGE H. WU |

///

///

///

-i-

# **TABLE OF CONTENTS**

CAPTION PAGE..................................................................................................i

TABLE OF CONTENTS....................................................................................ii

TABLE OF AUTHORITIES ............................................................................. iii

I.   RELEVANT FACTS.................................................................................1

II.  LEGAL STANDARD ................................................................................3

III. DISCUSSION .............................................................................................3

   A.  General Rule .........................................................................................3

   B.  Plaintiff's ADA Cause of Action..........................................................4

      1. Plaintiff is Disabled ..........................................................................5

      2. Defendants Are Public Accommodations........................................5

      3. Defendants' Facilities Have Barriers That Are Readily
        Removed ...........................................................................................5

      4. Plaintiff's Actual Knowledge of Barriers ........................................7

   C.  Plaintiff's State Causes of Action.........................................................8

IV.  CONCLUSION ........................................................................................11

///

///

///

# TABLE OF AUTHORITIES

**STATUTES:**

Federal Rule of Civil Procedure 56 ................................................................................3

42 U.S.C. § 12102(A) .......................................................................................................5

42 U.S.C. § 12181(7)(E) ...................................................................................................5

42 U.S.C. § 12182(a) ...................................................................................................3,4,5

42 U.S.C. § 12182(b)(2)(A)(iv) ........................................................................................4

42 U.S.C. § 12188(a) .......................................................................................................7

28 C.F.R., Pt. 36..............................................................................................................FN1

28 C.F.R. § 36.304(b)(18)................................................................................................7

56 Fed. Reg. 35544, 35568 (1991) .................................................................................7

ADAAG § 3.5 ..................................................................................................................5

ADAAG § 4.1.2(5)(a) ......................................................................................................6

ADAAG § 4.6.2 ...............................................................................................................6

California Civil Code § 51(f)........................................................................................8,9

California Civil Code § 52(a) .........................................................................................9

California Civil Code § 54.1(d) .....................................................................................8

California Civil Code § 54.3(a) ......................................................................................9

**CASES:**

Access Now, Inc. v. South Florida Stadium Corp.,
   161 F.Supp.2d 1357 (S.D. Fla. 2001) .....................................................................5

Anderson v. Liberty Lobby Inc.,
   477 U.S. 242 (1986).................................................................................................3

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986).................................................................................................3

D'Lil v. Anaheim Hotel Partnership,
   43 Fed. Appx. 96 (9th Cir. 2002).............................................................................6

Doran v. 7-11,
   506 F.3d 1191 (9th Cir. 2007) ...................................................................................7

Gunther v. Lin,
   144 Cal.App.4th 223 (2006) ....................................................................................10

Independent Living Resources v. Oregon Arena Corp.,
   982 F. Supp. 698 (D. Org. 1997).................................................................................4

Harris v. Capital Growth Investors XIV,
   52 Cal.3d 1142 (1991) ................................................................................................9

Helen L. v. DiDario,
   46 F.3d 325 (3rd Cir. 1995) ........................................................................................4

Koire v. Metro Car Wash,
   40 Cal.3d 24 (1985) ....................................................................................................9

Lentini v. California Center for the Arts, Escondido,
   370 F.3d 837 (9th Cir. 2004) ....................................................................................10

Munson v. Del Taco, Inc.,
   522 F.3d 997 (9th Cir. 2008) ....................................................................................10

Parr v. L&L Drive-Inn Restaurant,
   96 F.Supp.2d 1065 (D. Hawaii)..................................................................................5

Wilson v. Haria and Gogri Corp.,
   479 F. Supp. 2d 1127 (E.D. Cal. 2007) ....................................................................10

Wilson v. Pier 1 Imports (US), Inc.
   439 F.Supp.2d 1054 (E.D.Cal.,2006) .....................................................................4,6

Wyatt v. Ralphs Grocery Co.
   65 Fed.Appx. 589 (9th Cir. 2003)...............................................................................6

///
///
///

## I. RELEVANT FACTS

Plaintiff Darryl Eversole is a man with post-polio syndrome and psoriatic arthritis. Exhibit 1 (Plaintiff Dec), paragraph 2. He cannot walk without mobility aids. Id. Mr. Eversole has special shoes, leg braces and two high platform crutches that he must use to ambulate. Id. He has been issued a permanent Disabled Person Parking Placard by the State of California, Department of Motor Vehicles. Id. He has great difficulty in ambulating distances. Id.

Plaintiff Eversole complains about the parking situation at a business called Anna's Linens and the adjacent parking that serves the Valley Plaza. Exhibit 5 is a satellite image used by plaintiff to illustrate the parking problem. The property that is the subject of this lawsuit is surrounded by a black squiggly line and encloses the buildings marked as items "1" and "2" and the parking areas marked as "3," "5" and "6." See Exhibit 5. Anna's Linens is building "1." Exhibit 4 (Bishop Dec), paragraph 6; Exhibit 5; Exhibit 3 (Photos), p. A. There are approximately 45 parking spaces that are designated by signs as reserved exclusively for customers of Anna's Linens. Exhibit 4 (Bishop Dec), paragraph 6; Exhibit 3 (Photos), pp. G, J, K, & L. Looking at exhibit 5 (Satellite View), those parking spaces are found immediately in front of building "1" (Anna's Linens) and in the section of the parking lot labeled "5." Exhibit 4 (Bishop Dec), paragraph 6. They are also seen in exhibit 3 (photos), pages A-D and G-O. Among these 45 parking spaces, there is only one designated accessible parking space.[1] Exhibit 4 (Bishop Dec), paragraph 6; Exhibit 3 (Photos), p. M.

There are a number of marked accessible parking spaces in the parking structure identified as "3," but there is no wheelchair accessible path of travel from the parking structure to the entrance of the Anna's Linens because the sidewalk narrows to about 10 inches between a dumpster enclosure and a wheel stop. Exhibit 4 (Bishop Dec),

---

[1] Due to the sensitive of the word "handicap", the code uses the term "accessible parking" to refer to parking that is marked, reserved, and configured for persons with disabilities. Plaintiff's counsel will follow suit in this brief.

-1-

1  paragraph 8; Exhibit 3 (Photos), pp. O-R.

2      Referring to exhibit 5 (Satellite Image), the balance of the parking at this
3  property is located in parking structure "3" and the section of the outdoor parking
4  labeled "6."  Exhibit 4 (Bishop Dec), paragraph 9; Exhibit 5 (Satellite Image).  This
5  parking is not reserved for customers of Anna's Linens and the signs state that the
6  parking is for customers shopping at the Valley Plaza.  Exhibit 4 (Bishop Dec),
7  paragraph 9; Exhibit 3 (Photos), pp. V-Z.  Referring to exhibit 5 (Satellite Image), the
8  Valley Plaza is across Bellingham Ave to the east of the property involved in this
9  lawsuit; it is designated with "4"s in exhibit 5.  Exhibit 4 (Bishop Dec), paragraph 9;
10 Exhibit 5 (Satellite Image).

11     On July 10, 2007, Mr. Eversole went to the Anna's Linens and purchased sheets
12 and other items.  Exhibit 1 (Plaintiff's Dec), paragraph 3; Exhibit 2 (Receipt).  To Mr.
13 Eversole's great frustration, the only accessible parking space was taken and he was
14 forced to park remotely.  Exhibit 1 (Plaintiff's Dec), paragraph 6.  Mr. Eversole has
15 great difficulty in ambulating distances and always parks in the handicap parking
16 spaces.  Id.  It is painful and difficult for him to ambulate and, therefore, he derives a
17 great benefit from parking in handicap parking spaces that are located closest to the
18 entrances.  Id.  Additionally, Mr. Eversole frequents this parking lot because he
19 regularly goes to his doctor's office which is located in Valley Plaza.  Exhibit 1
20 (Plaintiff's Dec), paragraph 3.

21     Defendant Anna's Linens, Inc. is the tenant and business operator of the Anna's
22 Linens store while Defendant Valley Plaza, LLC is the landlord and property owner of
23 that property.  Exhibit 6 (Lease Agreement); Exhibit 7 (ROG Responses), response 1.

24     Discovery having been completed, this case having been litigated for more than a
25 year, this case is amenable to summary judgment and, therefore, the Plaintiff
26 respectfully requests the court consider the points and authorities discussed herein and
27 enter summary judgment on behalf of the plaintiff.

28

## II. LEGAL STANDARD

The Federal Rules authorize judgment as to "all or any part of" a claim upon a showing that there is no genuine issue of material fact as that particular claim. Fed. R. Civ. P. 56. A motion under Rule 56 "pierces" the pleadings and puts the opponent to the test of affirmatively coming forward with sufficient evidence in support of its claims to create a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action.

Id., at 327.

Whether an issue is "material" is determined by the "substantive law's identification of what facts are critical and what facts are irrelevant." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). Whether a dispute is "genuine" is a determination for the judge, who must ask whether a reasonable jury could return a verdict for the non-moving party. Id. at 248-250.

In the present case, there can be no genuine dispute over the facts of the case and those facts inform the court and the parties that it would be a waste of judicial resources for this case to proceed to trial. There is no genuine issue of material fact and this court should grant the plaintiff's motion.

## III. DISCUSSION

A. <u>General Rule</u>

Under Title III of the Americans With Disabilities Act of 1990 ("ADA"), the general rule is that: "No individual shall be discriminated against on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42

U.S.C. § 12182(a). The term "discrimination" is a little misleading:

> Although the term "discrimination" evokes images of active discrimination, e.g., a person is expressly forbidden to enter the premises because of his or her disability, Congress also intended to eliminate more passive forms of discrimination, e.g., a person is physically unable to enter the premises because it lacks a wheel-chair accessible entrance. H.R.Rep. No. 101-485(II) at 99 (1990), reprinted at 1990 U.S.C.C.A.N. 303, 382 (a primary purpose of the ADA is to "bring individuals with disabilities into the economic and social mainstream of American life.")

Independent Living Resources v. Oregon Arena Corp., 982 F.Supp 698, FN1 (D. Org. 1997). The scope of the Act covers not only intentional discrimination, but also the discriminatory effects of "benign neglect, apathy, and indifference." Helen L. v. DiDario, 46 F.3d 325, 335 (3rd Cir. 1995) (internal quotations omitted).

For example, as discussed more fully below, discrimination under the Title III of the ADA often results (as in the present case) from a failure to comply with architectural codes and, therefore, to provide "full and equal" or "safe and convenient" access to facilities governed by the law.

B.    Plaintiff's ADA Cause of Action

Under Title III of the ADA, one form of discrimination is defined as: "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). Thus:

> In order to make a prima facie case under Title III of the ADA, a plaintiff must prove that (1) he has a disability, (2) defendants' facility is a place of public accommodation, (3) and he was denied full and equal treatment because of his disability. To succeed on a ADA claim of discrimination on account of an architectural barrier, the plaintiff must also prove that (1) the existing facility at the defendants' place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable. If plaintiff satisfies his burden, the burden shifts to the defendant to show that removal of the barriers is not readily achievable.

Wilson v. Pier 1 Imports (US), Inc. 439 F.Supp.2d 1054, 1067 (E.D.Cal.,2006) (internal citations omitted). Plaintiff will discuss each element, seriatim.

-4-

1.  Plaintiff is Disabled

The plaintiff is a man with post polio syndrome who cannot walk without mobility aids. Exhibit 1 (Plaintiff's Declaration), paragraph 2. There can be little doubt that he fits the qualification under the Americans With Disabilities Act as a person with a disability. See 42 U.S.C. § 12102(2)(A) (Defining a physical impairment substantially affecting a major life activity as qualifying as a "disability"). Given plaintiff's inability to walk . . . this is not a genuine issue.

2.  Defendants Qualify as Either Owners, Lessors, Lessees or Business Operators of a Place of Public Accommodation

Title III of the ADA holds owners, lessors, lessees, and business operators responsible for non-discrimination at places of public accommodation. 42 U.S.C. § 12182(a). Anna's Linens and, in fact, the shopping center known as Valley Plaza are places of public accommodation. 42 U.S.C. § 12181(7)(E) (expressly identified clothing stores, shopping centers, and other sales establishments as places of public accommodation). Valley Plaza, LLC (as the landlord/property owner) and Anna's Linens, Inc. (as business operator and lessee) are the responsible parties.

3.  Defendants' Facilities Had Architectural Barriers That Were Readily Achievable to Remove

Under the Americans with Disabilities Act Accessibility Guidelines ("ADAAG")[2], a facility is only "accessible" if it "complies with the guidelines." ADAAG § 3.5. Every case that has addressed the question of "*what constitutes a barrier?*" has held that the ADAAG is to be used to determine the existence of barriers. See Access Now, Inc. v. South Florida Stadium Corp., 161 F.Supp.2d 1357, 1368 (S.D. Fla. 2001); Parr v. L & L Drive-Inn Restaurant, 96 F.Supp.2d 1065, 1086 (D. HI 2000);

---

[2] Found at 28 C.F.R., Part 36, appendix "A."

1  Wilson, 439 F.Supp.2d at 1067 ("*non-compliance with ADAAG standards can
2  demonstrate a prima facie barrier . . . .*"); D'Lil v. Anaheim Hotel Partnership, 43 Fed.
3  Appx. 96, 97 (9th Cir. 2002), ("*ADAAG requirements [for a particular condition]
4  demonstrates that the lack of [compliance] is both a barrier and the kind of barrier the
5  ADA was intended to overcome.  Otherwise ADAAG would not require [the particular
6  condition]*"; Wyatt v. Ralphs Grocery Co. 65 Fed.Appx. 589, 590, (9th Cir. 2003)
7  ("*Violations of ADAAG standards indicate the existence of an architectural barrier.*")

9  Under the ADAAG, if there are between 26 and 50 parking spaces serving a
10 particular facility, then there must be at least two (2) accessible parking spaces.  Thus,
11 because there are 45 parking spaces reserved for use by the customers of Anna's
12 Linens, there must be two accessible spaces provided.  ADAAG, section 4.1.2(5)(a).
13 "Accessible parking spaces serving a particular building shall be located on the shortest
14 accessible route of travel from adjacent parking to an accessible entrance." See
15 ADAAG, section 4.6.2.  Thus, the two accessible parking spaces required for Anna's
16 Linens must be the closest parking spaces to the front entrance.  In the present case,
17 there is only one accessible parking space located in front of Anna's Linens.  This is
18 not compliant with the law.

20 Additionally, the balance of the parking spaces (those not marked as reserved for
21 Anna's Linens) are all reserved for use by persons shopping at the Valley Plaza
22 shopping center.  Thus, while it appears that there are a correct number of accessible
23 parking spaces, the parking lot violates the ADAAG because all of the accessible
24 parking spaces are located in the parking structure.  Under the ADAAG, for facilities
25 that have, "multiple accessible entrances" the adjacent accessible parking spaces "shall
26 be dispersed and located closest to the accessible entrances."  See ADAAG, section
27 4.6.2.  Thus, the accessible parking spaces serving the Valley Plaza need to be located

in the outdoor lot (area "6" on the Satellite image), on the Bellingham Ave side of the lot to minimize the distance and travel time to the Valley Plaza.

The removal of the barriers, *i.e.*, the painting in of the accessible parking spaces is readily achievably done. First, this action is on the list of 21 actions listed as "likely to be" readily achievable under the Code of Federal Regulations. See 28 C.F.R. § 36.304(b)(18) and 56 Fed. Reg. 35544, 35568 ("*Section 36.304(b) provides a wide-ranging list of the types of modest measures that may be taken to remove barriers and that are likely to be readily achievable.*").  Second, expert witness, Paul Bishop declares that this type of work is, "the type of work that can be done by any contractor or signing company and is easily done without much difficulty or expense."  Exhibit 4 (Bishop Dec), paragraph 10.  Finally, Defendant Valley Plaza, LLC makes no contention that the installation of the legally required accessible parking spaces is not readily achievable.  Exhibit 7 (ROG Responses), Response 17.

In short, the parking lot serving the Anna's Linens and the Valley Plaza did not comply with the ADAAG, presented barriers as defined by the law, and were readily fixed.

    4.    <u>The Plaintiff Must Have Actual Knowledge of the Barrier</u>

Finally, the plaintiff must have "actual knowledge" of the barrier impeding his ability to fully and equally access the facilities.  See 42 U.S.C. § 12188(a)(1) ("Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice" that a defendant is not complying with the law).  In fact, recent cases have held that a person can gain this "actual notice" from merely being told about it.  <u>Doran v. 7-11</u>, 506 F.3d 1191, 1202 (9th Cir. 2007) (holding that if a plaintiff learns of other violations in discovery or otherwise, he can "permissibly challenge all barriers in that public accommodation that are related to his

or her specific disability."). In the present case, however, there is no problem with this prong because the plaintiff actually visited the Anna's Linens, faced the barrier, and has frequented the parking lot to visit his doctor. Exhibit 1 (Plaintiff's Declaration), paragraphs 3 & 6. There is no genuine issue of material fact with respect to this prong.

**In summary**, each of the elements are beyond genuine contest: (1) the plaintiff is disabled; (2) the defendants are owners, lessors, lessees, or business operators of a place of public accommodation; (3) the public accommodation has architectural barriers that are "readily achievably" removed; and (5) the plaintiff encountered the non-removed barriers. In 1990, Congress passed a law (the ADA) providing that when these facts are put together: there has been an act of discrimination.

C.  <u>Plaintiff's State Causes of Action</u>

Plaintiff's state causes of action, *i.e.*, the Unruh Civil Rights Act ("Unruh Act") and California's Disabled Persons Act ("CDPA") are <u>wholly</u> predicated upon a violation of the Americans With Disabilities Act. The Unruh Civil Rights Act provides that "a violation of the right of any individual under the Americans With Disabilities Act of 1990 shall also constitute a violation of this section." Cal. Civ. Code § 51(f). California's Disabled Person's Act likewise provides that, "a violation of the right of an individual under the Americans With Disabilities Act of 1990 also constitutes a violation of this section . . . ." Cal. Civ. Code § 54.1(d). Thus, a violation of the ADA is a violation of both state laws. Thus, if the court grants the plaintiff's summary judgment motion as to the federal cause of action, then it must grant the motion as to the state causes of action.

One difference between federal and state law, however, are the available remedies. Under both the Unruh Act and CDPA, a prevailing plaintiff is entitled to damages up to a maximum of three times the actual damages but "in no case" less than a statutorily set penalty, which is $4,000 under the Unruh Act and $1,000 under the

-8-

CDPA.  Cal. Civ. Code § 52(a) & § 54.3(a).  Plaintiff is only seeking the statutory minimum damage award.

The unsettled legal question is whether the plaintiff can recover the $4,000 penalty assessment under the Unruh Act.  Plaintiff cannot recover under both the Unruh Act and the CDPA.  See Cal. Civ. § 54.3(c).  All things being equal, the plaintiff would opt to recover the higher penalty under the Unruh Act. But recent case law has cast some doubt on whether the $4,000 Unruh penalty is recoverable.  Plaintiff will discuss the state of the law on this issue.

Construing an earlier version of the Unruh Act, the California Supreme Court had published two conflicting statements.  First, the California Supreme Court held that, "*discriminatory intent is not required by the Unruh Act . . . Plaintiff was entitled to equal treatment . . . regardless of defendants' intent in denying him equal treatment.*" Koire v. Metro Car Wash,  40 Cal.3d 24, 33 (1985).  Six years later, the California Supreme Court held that, "*a plaintiff seeking to establish a case under the Unruh Act must plead and prove intentional discrimination in public accommodations in violation of the terms of the Act.*"  Harris v. Capital Growth Investors XIV, 52 Cal.3d 1142, 1175 (1991).  Then, in 1992, the Unruh Act was amended to incorporate the Americans with Disabilities Act. See Cal. Civ. § 51(f) ("*a violation of the right of any individual under the Americans With Disabilities Act of 1990 shall also constitute a violation of this section.*")  Because Title III ADA claims do not require proof of "intent," the question arose, "*does an Unruh claim, predicated upon an ADA violation, require proof of intent?*"[3]  The Ninth Circuit ruled that it did not:

> We find that, regardless of whether Harris may continue to have relevance to other Unruh Act suits, no showing of intentional discrimination is required where the Unruh Act violation is premised on an ADA violation. This result is mandated by the plain meaning of the Unruh Act's language, which states that a violation of the ADA is, per se, a violation of the Unruh

---

[3] Plaintiff does not have any evidence of "intentional" discrimination in this case.

-9-

|   |   |
|---|---|
| 1 | Act. See Biehl v. C.I.R., 351 F.3d 982, 986 (9th Cir.2003) ("Statutory interpretation begins with the plain meaning of the statute's language." (citation and quotation marks omitted)). "Because the Unruh Act has adopted the full expanse of the ADA, it must follow, that the same standards for liability apply under both Acts." Presta, 16 F.Supp.2d at 1135. Therefore, we affirm the district court's conclusion that, insofar as the appellants violated the ADA, a showing of intentional discrimination was not required in order to award damages under the Unruh Act. |

Lentini v. California Center for the Arts, Escondido, 370 F.3d 837, 847 (9th Cir. 2004).

In 2006, the Fourth District Appellate Court in California, Division Three, came to a different conclusion. In Gunther v. Lin, 144 Cal.App.4th 223 (2006), the Gunther court disagreed with Lentini. The Gunther court found that the Unruh Act was "reserved for intentional violations." Gunther, 144 Cal.App.4th at 257. This division between federal and state decisions did not end there.

The first federal decision to address the Lentini-Gunther dispute was handed down by Judge Karlton in the Eastern District. See Wilson v. Haria and Gogri Corp., 479 F. Supp. 2d 1127 (E.D. Cal. 2007). Judge Karlton savaged the Gunther decision and noted that federal courts were free to disregard the decisions of intermediate state courts where there was convincing evidence that the state court got it wrong: "[h]ere, there is convincing evidence suggesting that the decision is not likely the law of the state of California." Id. at 1136.

Finally, plaintiff's counsel was sucked into the dispute. On April 14, 2008, the Ninth Circuit addressed the continuing division between federal and state authority on this subject and certified the question to the California Supreme Court. Munson v. Del Taco, Inc., 522 F.3d 997 (9th Cir. 2008)[4]. The Munson court noted that normally they would simply follow California appellate law on an interpretation of a California statute but, "Here, we are in doubt about whether the California Supreme Court would follow

---

[4] Plaintiff's counsel represents Mr. Munson.

-10-

*Gunther.*" Id. at 1002. On June 25, 2008, the California Supreme Court notified plaintiff's counsel that it had granted the request for certification and restated the certified question as:

> (1) Must a plaintiff who seeks damages under California Civil Code section 52, claiming the denial of full and equal treatment on the basis of disability in violation of the Unruh Civil Rights Act (Civ. Code, § 51) and the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.), prove "intentional discrimination"?
> (2) If the answer to Question 1 is "yes," what does "intentional discrimination" mean in this context?

Exhibit 8 (Cal. Supreme Court Certification). Petitioner's brief is due on July 25, 2008. There are nine known amicus who will be participating. Thus, as it stands, the published Ninth Circuit precedence (Lentini) is that there is no showing of intentionality required to prove an Unruh violation and Munson does not change that fact by its certification of the question and its published statement of doubt regarding Gunther. It seems that in the Ninth Circuit, the law of the land is that there is no need to prove intentionality to obtain the $4,000 Unruh penalty.

Thus, plaintiff respectfully requests this Court award the $4,000 penalty under the Unruh Act rather than the $1,000 penalty under the CDPA. Nonetheless, it is plaintiff's intention that this matter be wrapped up on summary judgment and if this Court finds that intentionality is required, then plaintiff would accept the $1,000.00 penalty.

## IV. CONCLUSION

No further judicial resources should be expended in this case: it is prepared for summary judgment.

Dated: July 18, 2008                    CENTER FOR DISABILITY ACCESS

By:_____
MARK D. POTTER
Attorney for Plaintiff

-11-

# PROOF OF SERVICE

EVERSOLE v. VALLEY PLAZA, ET AL.          Case # CV07-5990GW (JCx)

I, the undersigned, am over the age of eighteen years and am resident of San Diego County, California; I am not a party to the above-entitled action; my business address is 100 East San Marcos Blvd., Suite 400, San Marcos, California, 92069.

On July 21, 2008 I served the following document(s):

PLAINTIFF'S NOTICE OF MOTION FOR SUMMARY JUDGMENT
PLAINTIFF'S POINTS & AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT
PLAINTIFF'S EXHIBITS ISO MOTION FOR SUMMARY JUDGMENT
[PROPOSED] JUDGMENT

Addressed to:
Gregory F. Hurley, Esquire
Jeanne U. McKee, Esquire
GREENBERG & TRAURIG, LLP
3161 Michelson Drive, Suite 1000
Irvine, CA 92612

Daniel P. Stimpert, Esquire
COHEN, STIMPERT & FORD, LLP
6380 Wilshire Blvd., Suite 850
Los Angeles, CA 90048

☐ BY MAIL: I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at San Marcos, California.
☐ BY FACSIMILE: In addition to the service by mail as set forth above, I forwarded a copy of said documents via facsimile to the listed facsimile number.
☐ BY OVERNITE EXPRESS: I caused such envelope with postage thereon fully prepaid to be placed in the Designated Overnite Express drop box at San Marcos, California.
☑ BY PERSONAL SERVICE: I caused said documents to be personally served on all listed recipients via Diversified Legal Services.
☑ BY ELECTRONIC MAIL TRANSMISSION: via the United States District Court, Central District of California's CM/ECF system. I caused listed documents to be electronically filed and subsequently emailed to the recipient(s).

Executed on July 21, 2008 from San Marcos, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

        /s/ Lauren Whitehead
        Lauren Whitehead

PROOF OF SERVICE